IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS,
TEXARKANA DIVISION

| | |
|---|---|
| BROOKE RANEY, § | |
| § | |
| PLAINTIFF, § | |
| § | |
| vs. § | CIVIL ACTION NO.: 5:19-CV-00094 |
| § | |
| HAYDEN H. FRANKS, M.D., P.A. § | |
| d/b/a FRANKS DERMATOLOGY, § | |
| § | |
| DEFENDANT. § | |

## ORIGINAL COMPLAINT AND REQUEST
## FOR TEMPORARY RESTRAINING ORDER

### A. Parties

1. Brooke Raney, Plaintiff herein, is an individual and a citizen and resident of the State of Texas.

2. Hayden H. Franks, MD, P.A. d/b/a Franks Dermatology, Defendant herein, is a professional association and a corporate citizen of the State of Arkansas.

### B. Jurisdiction

3. The Court has jurisdiction over this matter under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Raney and the Defendant and the amount in controversy is well in excess of $75,000.

1

## C. Venue

4. Venue is proper in the Eastern District of Texas under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to this claim occurred in the Eastern District of Texas.

## D. Statement of Facts

5. Raney is a certified and licensed Nurse Practitioner. She was hired by Dr. Hayden Franks not as a nurse practitioner, but as a nurse at an hourly rate of $20.00 per hour, and began working at the Defendant's clinic located in Texarkana, Bowie County, Texas. She was not provided, nor requested to sign, a written contract for her employment with the Defendant.

6. After having worked for the Defendant as a nurse for approximately nine (9) months, the Defendant asked her if she would be willing to work at his clinic located in Little Rock, Arkansas, as a Nurse Practitioner in Dermatology. Raney agreed to this additional position, and moved to Little Rock for this opportunity.

7. Raney worked for the Defendant as a Nurse Practitioner for approximately nine (9) months without any written agreement or contract.

8. In April, 2019, Raney's boyfriend asked her to marry him, and she agreed to do so. Raney's fiancée lives in her hometown of Texarkana, Texas and Raney wanted to move back to be near him and plan their wedding. Accordingly, Raney orally resigned from her job with the Defendant explaining her decision in a face-to-face meeting with Dr. Franks early on the morning of May 29, 2019, and subsequently by her letter dated May 29, 2019 which was later delivered to the Dr. Franks at the clinic. A true and correct copy

of this letter is attached hereto as Exhibit "A", and is incorporated herein as if set forth at length.

9. On receiving her resignation, Raney and the Defendant agreed that Raney would continue to work for the Defendant for a period of time, allowing the Defendant to make a smooth transition to Raney's absence, i.e., a period of time commonly known as "two weeks' notice," although Raney actually offered to Dr. Franks to continue work for 30 days.

10. Immediately after receiving her oral resignation, Dr. Franks asked Raney to sign an employment agreement later that same morning. It was represented to Raney that she was required to sign this contract to make her consultation with the clinic's patients legal since she was practicing as a Nurse Practitioner that the employment agreement was needed for the clinic files since it was legally necessary in order for her to treat patients.

11. Taking Dr. Franks at his word, Raney signed the document presented to her, titled "Employment Agreement." A true and correct copy of this agreement is attached hereto as Exhibit "B", and is incorporated herein as if set forth at length.

12. Unbeknownst to Raney, the Employment Agreement contained a non-compete, which purports to restrict her ability to practice as a nurse practitioner in the field of dermatology within fifty miles of any of the Defendants' facilities for a period of two years after leaving employment with Dr. Franks clinic. She had no idea that Dr. Franks was setting her up to be unemployable in her chosen profession once she moved back to her hometown to be married and continue her practice in dermatology. Exhibit "B", § 5(a).

13. On receiving the signed Employment Agreement, Dr. Franks personally filled in the blank date on the first page of the Agreement, representing the document had been "entered into on" September 30, 2018. This is false: the Employment Agreement was signed on or about May 29, 2019, just shortly after Raney had resigned in a face-to-face meeting with Dr. Franks.

14. On June 12, 2019, while working out the agreed-upon remainder of her time with the Defendant, Raney was terminated by Dr. Franks. Later, after leaving the clinic premises, Michelle Jennings from the clinic texted Plaintiff and informed her that Dr. Franks's wife, Lynne, was presently typing a letter of termination and that Brooke would receive this letter when she returned with her keys and scrubs. A true and correct copy of this termination letter is attached hereto as Exhibit "C", and is incorporated herein by reference as if set forth at length. The stated reason for her supposed termination was conduct "detrimental to [the Defendant's] practice." *Id.* This statement is also false: by the time the letter was given to Brooke, she had already resigned from the Defendant's employment, and she specifically avers that she did nothing that could be characterized as "detrimental" to the Defendant's practice.

15. Raney then moved back to Texarkana, and has agreed to take a medical position as a Nurse Practitioner-Dermatology working at a medical practice in Texarkana, Texas. However, the Defendant has (through its lawyer) contacted Raney and threatened her with a lawsuit just as she begins her employment with her new employer, relying on the non-compete terms of the Employment Agreement.

16. If Raney is prevented from accepting a position as a Nurse Practitioner in Dermatology for a period of two years, it will cost her income well in excess of $100,000. Raney files this suit to prevent this outcome, and to have the Employment Agreement set aside as the product of fraud.

### E. Count 1: Fraud

17. Raney avers that the foregoing facts set forth a cause of action against the Defendant for fraud. Specifically, Raney avers that the representation that she was legally required to sign the Employment Agreement was false, that the existence of the Employment Agreement was in no way necessary for the protection of either Raney or the Defendant, and that the Employment Agreement was not in any way, shape or form legally required and a necessary document related to her employment with Franks Dermatology or ability to treat patients.

18. Raney avers that the Defendant's contrary statements were false, that they were made with knowledge that they were false, that she did not know the statements were false and that she would not have signed the Employment Agreement had she been told the truth about why Dr. Franks required her signature. Because the Employment Agreement is the product of fraud, Raney asks that it be rescinded.

### F. Count 2: Declaratory Judgment

19. Raney seeks a declaration from the Court that the Employment Agreement is unenforceable, and that the Covenant not to Compete found therein is unenforceable in its entirety. This declaration is sought pursuant to 28 U.S.C. § 2201. Raney also seeks attorney's fees and costs in conjunction with her declaratory judgment claim.

### G. Count 3: Request for Temporary Restraining Order

20. An Affidavit that proves the allegations in the application for injunctive relief are attached and incorporated by reference as Exhibit "D".

21. Raney will likely suffer imminent irreparable injury, if the Defendant is not immediately restrained from enforcing the Covenant not to Compete. Fed. R. Civ. P. 65(b)(1); *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365 (2008). Raney is a young Nurse Practitioner in Dermatology, at the outset of her career. If she is restrained from working in her chosen professional field for two years in her hometown she will irreparably lose this period of her professional development, have a "hole" in her resume that she will have to explain for the remainder of her professional life and miss out on the significant income she would have earned during the period.

22. There is no adequate remedy at law, because any legal remedy would be merely illusory. *Northern Cal. Power Agency v. Grace Geothermal Corp.*, 469 U.S. 1306, 105 S. Ct. 459 (1984). Even if Raney would be later compensated by this court's judgment for her loss of income, there can be no compensation for her loss of experience and the satisfaction of treating patients and the continuation of her chosen professional career

23. There is a substantial likelihood that Raney will prevail on the merits. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931, 95 S. Ct. 2561 (1975). The foregoing facts clearly establish that the Employment Agreement, on which any claim the Defendant might make, was procured on the basis of fraud by the Defendant, and is therefore subject to rescission. *Cantu v. Guerra & Moore, Ltd.*, 328 S.W.3d 1, 8 (Tex. App. — San Antonio 2009, no pet.); *Martin v. Cadle Co.*, 133 S.W.3d 897, 903 (Tex. App. — Dallas 2004, pet. denied).

This is even more the case because, under Arkansas law, if same has applicability, covenants not to compete are legally disfavored as a restraint of trade. *Optical Partners, Inc. v. Dang*, 381 S.W.3d 46, 53 (Ark. 2011) (also finding covenant not to compete not binding on optometrist, because employer had no legitimate business interests to protect).

24. The threatened and on-going harm to Raney outweighs the harm that a temporary restraining order would inflict on the Defendant. *Winter*, 555 U.S. at 24; *Yakus v. United States*, 321 U.S. 414, 440, 64 S. Ct. 660 (1944).

25. Issuance of a temporary restraining order would not adversely affect the public interest and public policy, because issuance of the order would serve the public interest. *Winter*, 555 U.S. at 24-26. The public has no interest in allowing agreements procured by fraud to be enforced, no interest in restraint of trade involving the medical profession, and is not benefitted if Raney is unable to practice her chosen profession, for the benefit of the public at large.

26. Raney is willing to post a bond if the Court deems it necessary and appropriate. However, Raney believes the public interest in this suit, as well as the small (and perhaps entirely unquantifiable) harm or damages the Defendant would suffer if the temporary restraining order and temporary injunction is granted, should be taken into account, and she therefore asks the Court order no or a nominal bond. *Kaepa, Inc., v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996).

27. The Court should enter this temporary restraining order without notice to the Defendant because Raney will likely suffer immediate and irreparable injury, loss, or damage if the order is not granted before the Defendant can be heard and there is no less

drastic way to protect plaintiffs' interests. Fed. R. Civ. P. 65(b)(1); *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 106 (2d Cir. 2009). Raney is scheduled to begin her new job on July 8, 2019, and there is simply not time for the Defendant to be served with this suit and to afford it an opportunity to be heard.

  28. Raney asks the Court to set the request for a preliminary injunction hearing, to convert the temporary restraining order it will grant into a temporary injunction while this suit is pending, at the earliest possible time.

### H. Prayer

  29. For these reasons, Raney asks that the Court do the following:

   a. Order that the Defendants make no effort to enforce the Covenant not to Compete contained in the employment Agreement attached hereto as Exhibit B;

   b. Enter judgment for Raney finding the Employment Agreement is the product of fraud and therefore subject to rescission;

   c. Enter the declaratory judgments set forth above;

   d. Enter a final Judgment holding the Employment Agreement Null and Void and a product of fraudulent inducement, and a permanent injunction against any attempted enforcement of the Non-Compete clause, together with all legal damages associated with the fraud;

   d. Award costs of suit to Raney; and

   e. Award attorney's fees pursuant to the common law and 28 U.S.C. § 2201.

Raney further asks the Court for any and all relief to which she may show herself to be justly entitled.

        Respectfully submitted,

        J. David Crisp
        **CRISP & FREEZE**
        1825 Moores Lane
        Texarkana, Texas 75503
        903.831.4004
        903.831.4006 (Fax)
        Email: dcrisp@crispfreeze.com

By:   /s/ J. David Crisp
       J. David Crisp
       State Bar No. 05081500

*Attorney for Plaintiff Brooke Raney*